GRIFFIS, P.J.,
dissenting:
¶ 26. I respectfully dissent.
¶27. I begin with my concern as' to whether Dr. Molleston preserved his objection to a due-process violation; Dr. Molleston was aware that Dr. Bush was present at the hearing. Yet Dr. Molleston made no objection. Instead, the objection was raised only after he received an adverse ruling,
¶ 28. According to the transcript of the May 2 hearing, the chair identified the committee members' and included Dr. Bush; Dr.--Molleston "was aware that Dr. Bush had been on the Credentials Committee and made no objection.
¶29. Due process certainly provides Dr. Molleston the right to be heard. It does not, however, allow Dr. Molleston to remain silent until after the hearing. I am of the opinion that Dr. Molleston waived his due-process objection because he did not timely raise it. See Terrell v. Tschirn, 656 So.2d 1150, 1152 (Miss.1995) (“Terrell should not be allowed to take his chances with a jury and then, -after he loses, file his motion.”);; Buchanan v. Buchanan, 587 So.2d 892, 897 (Miss.1991) (a court “will not allow a party to take his chances with a judge- about whom he knows of grounds for recusal and then, after he loses, file his motion”); Wilbanks v. Gray, 795 So.2d 541, 547 (¶ 25) (Miss.Ct.App.2001) (“If the appellants had.:a problem, with the reli *824 gious affiliation of the special chancellor, their motion for recusal should have been filed at the beginning of the action rather than after receipt of an adverse ruling.”). For these reasons, I would find Dr. Molle-ston waived his due-process objection.
¶ 30. Further, I am of the opinion that Dr. Molleston has not shown a violation of the bylaws. The composition of the Hearing Committee was established in article 15.4.1. Dr. Molleston argues that Dr. Bush’s participation violated the last sentence, which reads: “No Staff member or Board member who has actively participated in the consideration of the adverse recommendation or decision shall be appointed a member of this Hearing Committee.”
¶ 31. The bylaws also provide that the right to a hearing is for the review of “a recommendation of the Medical Executive Committee that ... will adversely affect his/her appointment....” Article 15.1.1. Article 15.2.1 provides for “notice of an adverse recommendation by the Medical Executive Committee.” Then, article 15.5.11 provides that the Hearing Committee’s recommendation pertains to “the original adverse recommendation of the Medical Executive Committee.” Therefore, the reference in article 15.4.1 to “the consideration of the adverse recommendation or decision,” is to the “recommendation of the Medical Executive Committee,” not to any preliminary recommendation by the Credentials Committee.
¶ 32. Dr. Bush served on the Credentials Committee, not the Medical Executive Committee. The bylaws do not prohibit a physician in that capacity from serving on the Hearing Committee. According to the record, Dr. Bush did not “actively participate” in the Medical Executive Committee’s decision. The Medical Executive Committee’s minutes state:
DR. BUSH: I was not [at the Medical Executive Committee meeting], I’m part of the Credentials Committee—
DR. MORIARITY: Oh, okay. I’m not part of credentials, so I don’t — I have not — I can’t speak about that meeting.
DR. BUSH: But I was not at either of the meetings of the Med[ical] Executive Committee],
¶ 33. Also, article 15.4.1 prohibits a person who participated in the Medical Executive Committee decision from being “appointed a member of this Hearing Committee.” There is no indication in the record that Dr. Bush was appointed a member of the Hearing Committee. Dr. Molleston does not make this argument; instead, Dr. Molleston states that Dr. Bush “deliberated with the Fair Hearing Committee” and “apparently” voted “as a member of the Fair Hearing Committee.” There appears to be no appointment of Dr. Bush as a member of the Committee, which would violate the bylaws.
¶ 34. The chancellor held:
The decision makers were those doctors specifically named to the Committee. Dr. Bush, with other persons not on the Committee, did participate at the hearing and the discussion after the hearing and all who attended the discussion signed the minutes or opinion. All committee members present ruled unanimously against the Appellant. While it may have been better if only the actual committee members signed the minutes or opinion, the signature of Dr. Bush and the other non-committee members constitutes harmless error.
¶ 35. I find no error in the chancellor’s decision. Therefore, I respectfully dissent. I would affirm the chancellor’s judgment.
WILSON, J., JOINS THIS OPINION IN PART.